# Flowers *against* Franklin.

A testator devised a farm, and bequeathed the stock thereon to his widow for life, for the use of herself and other members of his family, with remainder to others named in his will; after his death his widow took possession of the farm and stock, and used the same as directed by the will until her death: *Held,* that the stock and grain which remained at her death, although not the same which she received, went in remainder to the legatees named in the will, and not to the personal representative of the widow.

ERROR to the common pleas of *Bradford* county.

Nathaniel Flower, and others, legatees under the will of John Franklin, against Samuel Overshire, administrator of Abigail Franklin deceased. Special verdict.

" John Franklin, late of Athens, Bradford county, on the 12th day of November 1823, made his last and testament, a copy of which is hereto attached. The said John Franklin died the 10th day of March 1831; his will was duly proved before register the 10th day of May 1831."

" Abigail Franklin, widow of John Franklin, continued after his decease to reside on the farm, late of the said John Franklin; Amos Franklin worked the farm on shares for two seasons or years, and put in fall grain in the fall of the last year, while he improved it; giving to the said Abigail her share of the crops; Samuel Overshire worked the farm in like manner the next year, giving to Mrs Franklin her share."

" Abigail Franklin died in February 1834, and letters of administration on her estate were duly granted to Samuel Overshire the 10th day of February 1834."

[Flowers v. Franklin.]

" The following is an inventory of the property of Abigail Franklin, made by her administrator."

Here followed an inventory of property, consisting of wheat, rye, corn, horses, cows, &c., &c.

" One note against Nathaniel Clapp, for 100 dollars dated the 3d of October 1833; about sixty-six bushels of wheat, about ten bushels of rye. This was the share coming to Mrs Franklin, sowed on the farm by Samuel Overshire before her decease, and reaped after her decease.

A judgment in favour of Abigail Franklin against Jacob Campbell. A judgment in favour of Abigail Franklin against Joseph Green. A judgment in favour of Abigail Franklin against Mr Johnson.

" Before Charles Comstock for hay sold off the place after the decease of John Franklin, and which was on the place at the time of his decease."

" The grain contained in the above inventory, was sowed and raised after John Franklin's decease, and the stock and provisions raised, and other articles acquired after his decease, except the judgments mentioned above against Campbell, Green, and Johnson, the consideration of which is stated."

" The note against Nathaniel Clapp was given for grain raised on the farm."

" The family of John Franklin at the date of his will consisted of himself and wife, his grandson Amos Franklin, Lydia Bidlack and Abigail Bidlack, granddaughters of Mrs Franklin, by a former husband, and at his decease the same; besides others occasionally working on the place or in the family."

" It is admitted that Mrs Franklin had no estate but what she derived from the will of John Franklin, and acquired by the use of that property."

Upon the above state of facts it is submitted to the court, whether the devisees under the will of John Franklin, to wit; Keziah Beebe, the children of Billy Franklin, and Henry Franklin, or those who hold their interest under the said devises and bequests, are entitled to any or all the articles or things mentioned in said inventory after the payment of the debts of Mrs Abigail Franklin, and if the court should be of that opinion, judgment to be entered for the plaintiffs for such part or the whole; but if the court should be of opinion that the property belonged to Abigail Franklin at the time of her decease to be distributed by her administrators to her legal representatives, then judgment to be rendered for defendants with liberty to either party to take a writ of error."

Will of John Franklin.

" Item.—I give and bequeath to Amos Franklin, my grandson, thirty acres of land, on the south side of the farm on which I now reside, beginning on the bank of the Susquehanna river and extending one mile back; also, one half of my sawmill with the privileges

thereunto belonging; also, the privilege of the fruit in the little or-
chard, on the north side of the farm, adjoining Robert Spalding's
land, so long as my wife Abigail shall remain my widow; also, my
watch and my young bay mare; also, I further give to my said
grandson Amos a part of one of my barns to store his grain.

"Item.—I give and bequeath the residue of my farm, together
with the dwelling house, half of the sawmill and other privileges
and improvements, not before excepted, to my wife Abigail Franklin
during her life, to be improved for the use of the family, and so
long as my grandson Amos shall continue to work the farm to the
satisfaction of my said wife, he shall have his living out of the pro-
ducts of said farm; also, I further will that the debts, which I am
owing, shall be paid out of the moneys which shall be collected on
demands which are due to me; also, I give all my farming utensils
to my wife Abigail to be used in improving the farm; also, all the
household furniture I give and bequeath to my said wife, and she to
furnish my two grand daughters Lydia and Abigail Bidlack, each of
them, one bed and bedding; and I further bequeath to the said
Lydia and Abigail Bidlack, to each of them, one cow and ten sheep;
the cow and sheep to be delivered to Abigail when she arrives at
eighteen years of age, or at the decease of my wife. I do further
give and bequeath to my said wife my horse and oldest mare to-
gether with my saddle, wagon, cutter and harness thereunto belong-
ing, to be kept and used for the use and benefit of the family; also,
I further give to my wife Abigail my oxen and the residue of my
cattle and sheep which I have not already bequeathed, to be kept on
the farm for the use of the family; also, my swine and the grain and
corn which I now have, I give to my said wife, to be used for the
benefit of the family.

"Item.—I give and bequeath to my daughter Kezia Beebe thirty
dollars in money, to be laid out in procuring a gold medal to be en-
graved with my portrait and name; I also give to the daughter of
my grandson Henry Franklin, fifty dollars, to be paid out of the
moneys due me, and to be placed in the hands of my son-in-law Dr
Solomon Beebe, for the education of said child; I also further give
to my wife, my right in the Cayuga and Susquehanna Turnpike
Stock, amounting to ten shares, to be disposed of as she shall think
best. I also give and bequeath to my son Billy Franklin, the sum
of five dollars in money; and I hereby further give and bequeath to
my daughter Kezia Beebe, at the decease of my wife, the one-third
part of the estate both real and personal, which I, by this my last
will and testament have and do hereby bequeath, to my wife Abigail
Franklin during her life; and further, the remaining two-thirds of the
personal as well as the real estate bequeathed, as before mentioned, to
my wife during her life, I hereby give and bequeath at her decease,
to the children of my son Billy Franklin and to my grandson Henry
Franklin, to be shared by them and shared alike; I also further will,
that the demand I have against Michael R. Thorp, in the hands of B.

[Flowers v. Franklin.]

A. Lelard for collection, the one-half part to be given to my wife for the use of the family, and the other half part I give and bequeath to Henry Miller, Esq. of Spencer, in the state of New York; also, all moneys due me from the Cayuga and Susquehanna Turnpike Company, when collected, I give and bequeath to my said wife Abigail for the use of the family and to be applied in discharging the debts and bequests herein before mentioned; Also, I do hereby further will, that my grandson Amos Franklin, shall have the privilege of living in the house whether he works the farm or not."

The court below was of opinion that the plaintiff was not entitled to recover, and rendered a judgment for the defendant.

*Overton,* for plaintiff in error.

*Elwell* and *Williston,* contra, cited Mifflin *v.* Mifflin, 6 *Serg. &amp; Rawle* 460; *Toll. Law of Errors* 204.

The opinion of the Court was delivered by

KENNEDY, J.—A correct solution of the question presented here is only to be got at by a proper construction of the will of the testator. In the construction of wills, the first thing to be sought after, is, the intention of the testator, which must be collected from the terms of the will itself, *ex viceribus suis.* The intention being thus ascertained, such construction ought to be put on the will, as shall be best adapted to carry it into effect, so far as shall be consistent with the rules and policy of the law. It is admitted by the case stated that all that is claimed by the plaintiffs here was derived by Mrs Franklin the intestate of the defendant, from the will of the testator her husband John Franklin. The first gift to her, after giving to his grandson Amos Franklin a part of his farm, on which he resided, is the residue thereof, together with the dwelling house, half of the sawmill and other privileges and improvements not before excepted, which he gives and bequeathes to her during her life, *to be improved for the use of the family.* He also gives all his farming utensils to his wife, to be *used in improving the farm;* likewise his horse and old mare together with the saddle, waggon, cutter and harness thereunto belonging, to be kept and used for *the use and benefit of the family:* Also his oxen, and the residue of his cattle and sheep, to be *kept on the farm for the use of the family:* also his swine and the grain and corn, which he then had, to be used *for the benefit of the family.* After which, he gives and bequeathes to his daughter Kezia Beebe, at the decease of his wife, the one-third part of the estate, both real and *personal,* which he by his will *had given and thereby did give* to his wife *during her life:* and the remaining two-thirds of the *personal* as well as the real estate *bequeathed* as *before to his wife during her natural life,* he thereby gives and bequeathes, at her decease, to the children of his son Billy Franklin and his grandson Henry Franklin, to be shared by them and shared alike. He then further gives his wife, for *the use of the*

[Flowers v. Franklin.]

*family*, the one-half of the demand, he has against Michael R. Thorp, which was in the hands of B. A. Leland for collection: also, all the moneys due him, from the Cayuga and Susquehanna Turnpike Company, when collected, he gives to his wife *for the use of* the family, and to be applied to discharging the debts and bequests therein before mentioned.

The devise of the residue of the farm, with the dwelling house, half of the sawmill and other privileges and improvements not before excepted, appear to be the only things given to his wife, among those just mentioned, which are expressly limited to her for life, except the clause in the will, by which he gives those things over after the death of his wife, wherein he directs that " the one third part of the estate both real and *personal* which I by this my last will and testament have, and do hereby bequeath to my wife, Abigail Franklin *during her natural life*" is to be considered as being used by the testator for the purpose of limiting all the *personal* estate, given to her by his will, for the use of the family, to the term of her life. That the testator must have intended that the personal property given by his will to his wife, which should not have been consumed by use in her lifetime, should go over, at her death, to his daughter Kezia, the children of his son Billy and his grandson Henry Franklin cannot be questioned; for he has in so many words declared that it shall be so. And as the several bequests of personal property to his wife, are made without any limitation, being immediately annexed to them or any of them, the limitation for life introduced into the devises and bequests over to the plaintiffs, if it is to have any application and effect at all, must be referred to and embrace all the personal estate bequeathed to his wife for the use of the family, and operate as a limitation of it to her for her life. And as this does not seem to be inconsistent with any other part of the will, but may well comport with every part thereof, and we are bound to give effect to all the words of the will according to their usual import if we can, and this being the only construction by which it appears that any operation can be derived from these words of limitation for her life, it follows that the several bequests of personal property, not otherwise expressly limited, which are given to the wife for the use of the family, must be considered as given to her for her life only. This construction is strengthened also by the consideration, that these bequests were not made to the wife exclusively for her own use, but for the use of his surviving family at his death, whomsoever they might happen to be, that should compose it, provided she were still living to form the head of it. It is evident that he contemplated his wife being the head or chief of it; and to her, he, therefore, confided the management and direction of the property, trusting in her discretion and fidelity, that she would discharge the trust fairly and not abuse it. Doubtless he intended, too, that his wife should be the principal beneficiary in this trust; and did not intend that it should have any

existence, unless she survived him. It is also possible, nay probable, that he gave it all to enable her to support and maintain the family after his death, that they might all live together in the same manner as before, believing that it would promote her personal comfort most to live in that manner; but still he has declared the use in favour of the family in terms too strong to have admitted of her dismissing any member of that family without cause, and having refused him or her all participation in the benefits of the estate given to her, without violating the confidence as expressed. So far then as the use of the property might be found necessary for supporting and rendering every member of the family comfortable, she. had a right and full authority to apply and use it during her life; and for this purpose she might even have consumed and disposed of it all, had it been requisite, but not otherwise, consistently with a faithful discharge of her trust: for it was not the mere interest or annual profit that might be made of the property, personal I mean, given to her, that she was to have the right of taking and using for the benefit of the family, but if it became necessary, she was at liberty to have used, as probably she did, the property itself for this purpose. That the several bequests of personal property, in favour of the widow above specified, were intended to be in trust and only for life, is further manifested by the bequest of the testator's right to ten shares in the Cayuga and Susquehanna Turnpike stock, which he gives to her "to be disposed of as she shall think best." Thus showing by the change of phraseology, that when he did not intend to give to her in trust and for a special purpose, it was requisite that he should employ different terms from those used in the several bequests first mentioned: in which, it may be observed, that the terms used to express the use and object of those gifts are uniformly the same, without any material variation.

It has, however, been objected against the claim of the plaintiffs, that the property is not identically the same with that given by the will to the widow; that it is only the product or increase from it, and therefore does not fall within the terms of the bequest over to the plaintiffs, after the death of the widow. This objection, unless supported by what may reasonably be considered to have been the intention of the testator, ought not to prevail. The great object of the testator, in giving his wife the farm whereon he had lived himself with his family as the head of it, and the personal property already specified with it, was that she might continue to live thereon, during the remainder of her life, in the same manner, as nearly as possible, that she had done with himself previously thereto. This is made, in some degree, apparent from his furnishing her with the means, appropriated by him expressly too to that end, of keeping the family together around her upon the farm as long as she lived: and still further, from the circumstance of the most of the personal property given to her, being immediately connected with the farm, and almost indispensably necessary to a proper and advantageous enjoyment of

it, so as to afford the family the same comfort and convenience, which they had been accustomed to, during his life. Beside, a great portion of the property, being stock, composed of horses, cows, sheep and swine, such as is usually kept on a farm, and without which the accommodation, expected to be derived from the occupation of it, could not be obtained; and being also not only of a perishable nature, but a portion of it, such as could only be used by consuming it, the testator therefore knew perfectly well that the identical property, which he was giving, with the use of the farm, to his wife, for the use of herself and the family, would not likely be in existence at her death; and hence it is not likely that it was that, or that alone, which he intended to give over to the plaintiffs. But he knew also that in the usual economy and management of a farm, supplied with all the necessary implements of husbandry and the various kinds of stock suitable to carry on the business of it, and to make it capable of being used, so as to produce the requisite comfort and support for the family residing thereon, that every year more or less of those things would be consumed, lost or worn out, but their places would of course be supplied by others in fact, though looked upon generally as the same stock or property. New implements of husbandry would be obtained from time to time to supply the want of those lost, broken or worn out; horses dying or becoming, from any cause, unfit for the requisite service, would be replaced, either by others raised from the old stock, procured in exchange for those becoming unfit, or purchased with the proceeds of the farm; and uniformly the place of cattle, swine or sheep used for the purpose of being converted into beef, pork or mutton are supplied by the annual increase or progeny from the original stock; thus filling up and occupying the same space, and in reality, while kept upon the same farm and held by the same person, regarded generally as the same property. It is also manifest from the provisions of the will of the testator, in favour of his wife and family, that he intended nothing more, than a comfortable support and maintenance for them at most; and that he knew, that what he was about to give, could not be made use of as a capital or stock, from which any thing beyond that could be derived. It appears therefore to be more in accordance with what would seem to have been the inten- of the testator, to conclude, that he intended every thing of the same kind with that given by his will to his wife, for the use of the family, and supplying the place of what had been consumed, worn out, lost or disposed of in any way at the death of his wife, should go over to the plaintiffs. If he did not so intend it, to whom, I would ask, does the property in question belong, which is called the increase, but more properly speaking, that which, according to the necessary course of events in every such case, has been substituted for and taken the place exactly of the original, which has either perished or been consumed? Certainly not to the next of kin of the testator, as property that he died possessed of, without having

disposed thereof by his will, because all the right and authority he had over it, he clearly intended to part with by his will. Neither can it belong to the next of kin of the widow, for it is perfectly manifest, that the gift was not to her absolutely for her own use, but as trustee for the use of herself and the family during her life merely. And it can scarcely be imagined, I apprehend, that the surviving members of the family, for whose use, in common with the widow, it was holden by her during her life, can have any claim to it, because their interest, as well as that of hers, was to terminate as has been pretty clearly shown, by her death.

The judgment is reversed and a judgment rendered for the plaintiffs.